IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NECA LOCAL UNION NO. 313 IBEW HEALTH AND WELFARE FUND, *et al.*, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) C.A. No. 1:23-cv-00800-GBW-SRF |
| KAM ELECTRIC, INC., | )<br>)<br>) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Presently before the court in this civil action for breach of a collective bargaining agreement ("Labor Contract") and violations of the Employee Retirement Income Security Act of 1974 ("ERISA") § 515, 29 U.S.C. § 1145, is Plaintiffs' Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against Defendant KAM Electric, Inc. ("KAM"). (D.I. 16)[1] The Plaintiffs are: NECA Local Union No. 313 IBEW Health and Welfare Fund ("Welfare Fund"), NECA Local Union No. 313 IBEW Pension Fund ("Pension Fund"), NECA Local Union No. 313 IBEW Deferred Income Plan ("DIP Fund"), IBEW Joint Apprenticeship & Training Center Fund NECA Local Union 313 ("Apprenticeship Fund") (collectively the "Funds"), and also the International Brotherhood of Electrical Workers Local Union No. 313 (the "Union").[2] For the following reasons, the court recommends that Plaintiffs' motion for entry of default judgment pursuant to Rule 55(b)(2) be **GRANTED** and Plaintiffs awarded $49,136.08.

---

[1] The brief submitted in support of this motion is found at D.I. 17.
[2] Plaintiffs' motion for default judgment also lists IBEW Local 313/NECA Labor Management Cooperation Committee as a plaintiff, but this entity is not identified as a plaintiff in the complaint. (D.I. 17 at 1; *see also* D.I. 1)

1

I.  **BACKGROUND**

The complaint alleges that the Funds are trust funds established under 29 U.S.C. § 186(c)(5) and multiemployer plans and employee benefit plans within the meaning of 29 U.S.C. § 1002(37)(i), (ii), and (iii). (D.I. 1 at ¶ 4) The Union is an employee organization, and for purposes of collective bargaining, represents employees of Defendant KAM, a Delaware corporation. (*Id.* at ¶¶ 5, 7) The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185(a). (*See id.* at ¶ 2)

KAM and the Union are parties to the Labor Contract. (D.I. 1 at ¶ 9; *see also* D.I. 17-2) Under the terms of the Labor Contract, KAM is bound to various trust agreements and collection policies for the Funds. (D.I. 1 at ¶¶ 10–11; *see also* D.I. 17-3; D.I. 17-4; D.I. 17-5; D.I. 17-6) Pursuant to the Labor Contract, KAM is required to pay monthly contributions to the Funds and pay dues to the Union from wages withheld from employee paychecks. (*See* D.I. 1 at ¶ 11(a); D.I. 17-2 at § 5.09) KAM is required to file monthly remittance reports with the Funds accounting for all employees' work and the required contributions. (D.I. 1 at ¶ 11(b)) Failure to make these contributions, or to submit either incorrect or late remittance reports, results in delinquency. (*See* D.I. 17-2 at § 5.09)

The Fund Plaintiffs' trustees are authorized under the various trust agreements to promulgate rules and regulations for collections. (*E.g.*, D.I. 17-3 at art. V § 7(h); *see also* D.I. 17-6 ("Collection Policy")) Pursuant to the Collection Policy, in the event of delinquent payments, liquidated damages (10% of the delinquent payment amount) will be added to the past due principal amount and another 10% will be owed if the balance remains unpaid for thirty (30) days or more. (*E.g.*, D.I. 17-6 at art. II § 1 ¶¶ (a)–(b)); *see also* 29 U.S.C. § 1132(g)(2)(C)(ii).

The Collection Policy states that signatories will owe interest in the amount of 1% per month on outstanding balances on unpaid contributions. (*E.g.*, D.I. 17-6 at art. II § 2)

Plaintiffs allege that KAM failed to make its required contributions to the Funds and the Union from at least March of 2022 to June of 2022. (D.I. 1 at ¶ 12) They filed this lawsuit on July 25, 2023, for breach of contract and violations of ERISA § 515.[3] (D.I. 1) Service of process was made upon a managing agent of KAM on August 7, 2023. (D.I. 3) To date, KAM has not entered an appearance or filed a responsive pleading.

This case was referred to the undersigned Magistrate Judge on October 4, 2023, for resolution of all pre-trial matters. (D.I. 5) On October 27, 2023, Plaintiffs requested an entry of default in appearance against KAM pursuant to Rule 55(a). (D.I. 10) The Clerk of Court entered the default in appearance on October 30, 2023. (D.I. 12) Plaintiffs thereafter submitted the present motion before the court for default judgment pursuant to Rule 55(b) on February 26, 2024. (D.I. 16) KAM failed to submit a response.

A telephonic damages inquisition hearing was held on May 13, 2024. (D.I. 21) In accordance with the oral order entered by the court on the same date, (D.I. 22), Plaintiffs filed a supplemental declaration on June 7, 2024, supporting their damages calculation, (D.I. 24), and an amended form of order for default judgment on June 12, 2024. (D.I. 25)

A non-attorney corporate representative of KAM attended the damages inquisition hearing but was informed that he could not represent the interests of KAM because corporations are prohibited from representing themselves in federal court. *Rowland v. Cal. Men's Colony,*

---

[3] "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

3

*Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993). The non-attorney corporate representative was informed that a default in appearance would be entered if counsel for KAM did not appear before June 14, 2024, at which point the court would resolve the motion on the filings to date. (D.I. 22; D.I. 23) No attorney has since entered an appearance for KAM.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter a default judgment against a party after a default in appearance has been entered by the Clerk of Court. Fed. R. Civ. P. 55(b)(2). The decision to enter a default judgment is within the discretion of the court. *Tristrata Tech., Inc. v. Med. Skin Therapy Rsch., Inc.*, 270 F.R.D. 161, 164 (D. Del. 2010) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)).

First, the court must decide whether "'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit . . . conclusions of law.'" *Comput. Design & Integration, LLC v. Protego Tr. Co.*, 2024 WL 1434567, at *1 (D. Del. Apr. 3, 2024) (quoting *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). If the complaint states a cause of action, the court considers three factors for determining if a default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). "A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quotations omitted).

The court may conduct an evidentiary hearing to ascertain the amount of damages or establish the truth of the allegations. Fed. R. Civ. P. 55(b)(2). However, "Rule 55 does not

4

require that testimony be presented as a prerequisite to the entry of a default judgment[.]" 10A C. Wright & A. Miller, *Federal Practice and Procedure* § 2688 (4th ed. last updated Apr. 2023); *see Rhino Assocs., L.P. v. Berg Mfg. & Sales Corp.*, 531 F. Supp. 2d 652, 657 (M.D. Pa. 2007).

### III. DISCUSSION

#### A. Liability

To plead a breach of contract claim in Delaware, a plaintiff must allege the existence of a contract, a breach of that contract, and resulting damages. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 613 (Del. 2003). And "[t]o state a claim under [ERISA § 515], 'the conditions triggering an obligation under the relevant [collective bargaining agreement ] must first be met.'" *Local Union No. 98 IBEW v. LP Herman Co.*, 2015 WL 4273375, at *4 (E.D. Pa. July 14, 2015) (quoting *Cement Mason's Union Local No. 592 Pension Fund v. Zappone*, 501 F. Supp. 2d 714, 718 (E.D. Pa. 2007)).

The Complaint and exhibits incorporated by reference establish a breach of contract and ERISA § 515 claim. *NECA Local Union No. 313 IBEW Health and Welfare Fund v. H&H Servs. Elec. Contractors, Inc.*, 2023 WL 3719813, at *2 (D. Del. May 30, 2023). The complaint alleges that KAM was bound by the Labor Contract, a collective bargaining agreement, and its accompanying trust agreements and policies. (D.I. 1 at ¶ 11) KAM breached its obligations under these contracts by failing to make required contributions in violation of 29 U.S.C. §§ 185(a) and 1145. (*Id.*); *see also NECA Local Union No. 313 IBEW Health and Welfare Fund*, 2023 WL 3719813, at *2. Failure to make these payments caused damages to Plaintiffs, who will suffer prejudice if a default judgment is not granted. (*See* D.I. 1 at ¶¶ 11–12); *see also NECA Local Union No. 313 IBEW Health and Welfare Fund*, 2023 WL 3719813, at *1–2

(granting default judgment on substantially identical facts against a defendant for failure to make payments under the same collective bargaining agreement in issue in this case).

Furthermore, the relevant factors weigh in favor of entering default judgment on Plaintiffs' claims. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). First, Plaintiffs will be "denied any effective avenue for obtaining relief" without a default judgment because there is no indication that KAM will pay what it owes pursuant to the Labor Contract without court intervention. *Roy v. Sakhr Software Co. (KSCC)*, 2015 WL 4608132, at *2 (D. Del. July 31, 2015). Next, KAM does not appear to have a litigable defense, or any defense, because it has failed to appear. *See J&J Sports Prod., Inc. v. M&I Hosp. of Del. Inc.*, 2018 WL 6040254, at *2 (D. Del. Nov. 19, 2018). Finally, it can be inferred that KAM's avoidance of this suit is due to its culpable conduct. Service of process in this action was successfully made upon KAM's managing agent on August 7, 2023. (D.I. 3) Furthermore, a non-attorney corporate representative for KAM attended the court's damages inquisition hearing, thus, KAM has actual notice of the claims made against it. "At minimum, this lack of action amounts to deliberate and willful conduct." *SEC v. Krimm*, 2019 WL 2270437, at *5 (D. Del. May 28, 2019); *see also J&J Sports Prod. Inc.*, 2018 WL 6040254, at *2.

Consequently, the court recommends that Plaintiffs' motion for default judgment pursuant to Rule 55(b) be **GRANTED**.

**B. Damages**

Plaintiffs seek a damages award equal to the sum of KAM's overdue contributions, liquidated damages, interest, and reasonable attorneys' fees and costs totaling $49,136.08, as provided for under the Labor Contract and ERISA.[4] (D.I. 24; D.I. 25)

Exclusive of attorneys' fees and costs, Plaintiffs claim that KAM owes: $101.64 in the form of unpaid contributions that were due in June of 2022; $46,703.56 in liquidated damages; and $9,603.76 in interest. (*E.g.*, D.I. 25) But because KAM had made payments on the account and was overcharged a total of $20,458.68, which Plaintiffs credited against the damages, Plaintiffs are seeking $35,950.28. (*See, e.g.*, D.I. 24 at ¶ 3(g))

In support of this total, Plaintiffs include declarations of Scott Ernsberger, an employee of the Funds' third-party administrator, Zenith American Solutions, who attests that per the remittance reports submitted by KAM and records kept by Zenith, KAM owes the figures that have been submitted to the court. (D.I. 17-7; *see also* D.I. 24) Attached to Ernsberger's declarations are accountings of KAM's delinquent and remittance payments, as well as figures

---

[4] "In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
    (A) the unpaid contributions,
    (B) interest on the unpaid contributions,
    (C) an amount equal to the greater of[]
        (i) interest on the unpaid contributions, or
        (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
    (E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1332(g)(2).

showing how liquidated damages and interest were calculated in accordance with the Collection Policy. (D.I. 17-7 at 6–7; D.I. 24 at 5) Thus, the total sum of $35,950.28, including unpaid dues, liquidated damages, and interest, exclusive of attorneys' fees and costs, is consistent with the evidence.

Next, Plaintiffs assert they have incurred attorneys' fees and costs of $13,185.80 in pursuing payment from KAM. (D.I. 17 at 25; *see also* 29 U.S.C. § 1132(g)(2)(D)) W. Daniel Feehan of Holroyd Gelman, PC, avers that Plaintiffs have been charged $6,189.60 in costs and fees in connection with prosecuting this action. (D.I. 17-8 at ¶ 2) Feehan also attaches a fee report to his declaration showing the time worked for tasks associated with prosecuting the case at bar. (*Id.* at 6–8) Feehan further asserts that his firm's rates for the relevant work performed on the case are significantly lower than comparable firms in both Baltimore, Maryland and Washington, DC, per the Wolters Kluwer Real Rate Report and the Adjusted Laffey Matrix, respectively. (*Id.* at ¶ 6; *see also* D.I. 17-10; D.I. 17-11) Thus, the court finds that the claim for attorneys' fees appears reasonable under the "lodestar" method of evaluating fees adopted by the Third Circuit. *See Washington v. Phila. Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). Thus, the court recommends granting the award of attorneys' fees and costs to Holroyd Gelman, PC, in the amount of $6,189.60.

Additionally, Timothy J. Synder of Young Conway Stargett & Taylor, LLP, asserts that Plaintiff incurred attorneys' fees and costs of $6,996.20 in connection with pursuing the present claims against KAM. (*E.g.*, D.I. 17-9 at 1–2) Synder avers that his firm's rates for the relevant work performed on the case are significantly less than comparable firms in both Baltimore, Maryland and Washington, DC, per the Wolters Kluwer Real Rate Report and the Adjusted Laffey Matrix, respectively. (*Id.* at 7–9; *see also* D.I. 17-10; D.I. 17-11) Young Conway

Stargett & Taylor, LLP, also presented the court with an accounting of the charges to Plaintiff for prosecuting this action. (D.I. 20)[5] Consequently, the court finds that the attorneys' fees and costs claimed are reasonable and recommends granting the award to Young Conway Stargett & Taylor, LLP in the amount of $6,996.20.

Therefore, the court recommends that Plaintiffs' motion for default judgment be **GRANTED** and Plaintiffs awarded $35,950.28 in unpaid dues, liquidated damages, and interest and $13,185.80 in attorneys' fees and costs for a total of $49,136.08.

## IV. CONCLUSION

For the foregoing reasons, the court recommends that Plaintiffs' motion for default judgment (D.I. 16) be **GRANTED** and Plaintiffs awarded a total judgment in the amount of $49,136.08. The court further recommends entering a Default Judgment against KAM in the form proposed by Plaintiffs at D.I. 25.

Plaintiffs shall serve a copy of this Report and Recommendation on KAM in the same manner Plaintiffs served KAM with the Entry of Default in Appearance and shall file proof of such service with the court.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to four (4) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

---

[5] Although the declaration of Timothy Synder references an accounting of charges made to Plaintiffs in prosecuting this action, it was not attached the Plaintiffs' opening brief as indicated. (*See* D.I. 17-9 at 1) Upon the court bringing this to Plaintiffs' attention (D.I. 19), Young Conway Stargett & Taylor, LLP, hand-delivered the accounting to the court. (D.I. 20)

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: June 25, 2024

Sherry R. Fallon
United States Magistrate Judge